UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAYER IBRAGIMCHAYEV, Individually and on behalf of all other persons similarly situated, | ECF CASE |
| Plaintiff, | No.: _____ |
| v. | CLASS AND COLLECTIVE ACTION COMPLAINT |
| CHAMPION ELEVATOR CONSTRUCTION CORP., | JURY TRIAL DEMANDED |
| Defendant. | |

## NATURE OF THE ACTION

1.      Plaintiff Mayer Ibragimchayev ("Named Plaintiff"), alleges on behalf of himself and other similarly situated current and former employees, claims against his former employer, Champion Elevator Construction Corp., pursuant to Fed. R. Civ. P. 23 (a) and (b), that Defendant willfully violated the New York Labor Law by (i) failing to pay overtime, (ii) failing to provide the Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1,  and (iii) failing to provide an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment.

2.      Named Plaintiff asserts, on their behalf and other similarly situated current and former employees of Defendant and those who elect to opt into this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), that Defendant failed to pay them overtime premium pay.

3.      Named Plaintiff further alleges that for complaining about Defendant's unlawful employment practices and safety violations, Defendant unlawfully retaliated against him through

several adverse employment actions, including by assigning them to work alone against safety regulations, thereby endangering their life, transferring him and later wrongfully firing him.

4.    Plaintiff asserts against Defendant claims of familial status discrimination under the New York State Human Rights Law ("NYSHRL"), caregiver discrimination under the New York City Human Rights Law ("NYCHRL"), and gender and sex discrimination under NYSHRL and NYCHRL.

## JURISDICTION & VENUE

5.    This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiff's State law claims under 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's FLSA claim under 29 U.S.C. § 216(b).

6.    The State claims are sufficiently intertwined with the FLSA claim.

7.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) (2).

8.    This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

9.    Plaintiff Ibragimchayev was and is, at all relevant times, an adult individual, residing in Queens, New York.

10.    Defendant Champion Elevator Consulting, Corp. d/b/a "Champion Elevator" is a domestic business corporation organized under New York law, with its principal place of business at 1450 Broadway, 5th Floor, New York, NY 10175.

11.    Defendant employed Named Plaintiff and other similarly situated employees and controlled their work schedule and employment conditions, determined their payment rate and method, and kept at least some records regarding their employment.

12.     Defendant, upon information and belief, is an enterprise engaged in commerce or in the production of goods for commerce. It has engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000. These goods and materials that have been produced for and moved in commerce, which its employees have handled, including computers, elevator parts and tools.

<u>STATEMENT OF FACTS</u>

13.     At all relevant times, Defendant is business providing full-service elevator maintenance, repair, violation removal, commercial & residential elevator installation and testing. Its services are provided throughout New York City's five boroughs, Westchester, Hudson Valley, Nassau & Suffolk Counties, Connecticut and New Jersey.

14.     Upon information and belief, Defendant employs at least 40 individuals at any one time.

15.     Named Plaintiff worked for Defendant, as an elevator mechanic helper and an elevator mechanic, from April 17, 2023 to May 3, 2024, when he was wrongfully terminated.

16.     On April 17, 2023, Named Plaintiff started working for Defendant as an apprentice mechanic helper, a position he worked until mid-August 2023, when he was promoted to mechanic.

17.     From mid-August 2023 to October 18, 2023, Named Plaintiff worked as a mechanic.

18.     From October 18, 2023 to May 3, 2024, Named Plaintiff worked as a mechanic helper.

19.    As an elevator mechanic, Named Plaintiff performed core mechanic duties, including disassembling and assembling of elevator components, elevator repair and maintenance, lubricating equipment and elevator parts, replacing elevator parts, performing work in elevator shafts, moving, raising elevator parts and components, using dollies and rollers, cleaning equipment, conducting maintenance and safety checks of elevators, and making decisions on how to fix mechanical issues, and in performing his duties he was supposed to be assisted by mechanic helpers.

20.    As an elevator mechanic helper, Named Plaintiff assisted the elevator mechanics in their duties, including maintaining and repairing elevators.

21.    Named Plaintiff, as an elevator mechanic, by safety regulations was prohibited from working alone and always needed to be paired up with a mechanic.

Hours Worked & Lunch Breaks[1]

22.    During his employment, Named Plaintiff regularly worked 5 days a week, Monday to Friday.

23.    Named Plaintiff and similarly situated employees were generally scheduled to work, and did in fact work, 5 days a week, from 7:00 a.m. to 3:30 p.m. or from 8:00 a.m. to 4:30 p.m., with a supposed 30-minute lunch break, working 8 hours per day 40.0 hours per week.

24.    Named Plaintiff and other similarly situated employees regularly were unable to take their 30-minute lunch break, resulting in them working more than 40 hours per week. However, despite this, Defendant failed to pay them *any* wages when they worked through lunch.

25.    With the exception of when Named Plaintiff worked as a mechanic, he was unable to take lunch breaks during his workday, which means that he worked over 40 hours in those

---

[1] These subject lines are included only for organizational purposes.

weeks.  For instance, in some weeks, Named Plaintiff skipped all five lunches, resulting in him working 42.5 hour that week, but Defendant still paid him only for 40.0 ours, failing to pay him overtime.

26.     When Named Plaintiff worked in the Repair Department and Violations Department, he also observed other coworkers regularly work through their lunch breaks, working over 40 hours per week.

27.     Despite being scheduled and working these hours, Defendants only paid Named Plaintiff and his coworkers for 40.00 hours each week.

28.     Defendants failed to pay Named Plaintiff and his coworkers overtime hours when they worked through their lunch breaks.

29.     During his employment, Named Plaintiff and other similarly situated employees, were not allotted a 30-minute uninterrupted lunch break every day that they worked.

30.     During his employment, Named Plaintiff and other similarly situated employees often worked through their lunch breaks but were never compensated for that time worked.

31.     During most weeks when Named Plaintiff and his coworkers worked through lunch breaks, their hours worked were above 40 hours per week but they were never paid for the extra overtime they worked during lunch time.

32.     Defendant knew about the fact that their workers worked through lunch because their supervisor saw this practice and often forced Named Plaintiff and other workers to work more or "quicker," resulting in them working through lunch, and knowing that they could not complete this work without working through their breaks.

33.     Defendant did not require Named Plaintiff or other workers to clock in or out for lunch, failing to keep accurate time of their time worked.

34.     For a part of his employment, Named Plaintiff was a floating helper, so he worked with different teams and departments, and, as such he, observed other coworkers also have to skip lunch in order to finish the work for the day on time. These coworkers include Gabriel [last name unknown], Denis Sevrin, Evgeny [last name unknown], Will Rivera and his coworkers.

Failure to keep time records

35.     Defendant made Named Plaintiff and his coworkers sign pre-made daily schedules or fill out a timesheet with their *scheduled*, but not *actually* worked, times of work.

36.     Defendant had no policy or practice to have Named Plaintiff and his coworkers sign in or out, or otherwise monitor the hours they work.

37.     Defendant failed to track the actual hours Named Plaintiff and his coworkers worked.

38.     Defendant failed to have Named Plaintiff and his coworkers clock-in and out for lunch.

39.     When Named Plaintiff and, upon information and belief, his coworkers marked more than 40 hours on their timesheets and noted overtime hours, Defendant failed to pay them any wages for those overtime hours.

40.     Defendant paid Named Plaintiff and his coworkers exactly 40.00 hours each week, failing to account the actual hours and minutes that they worked and failing to pay them for their overtime hours worked.

41.     When Named Plaintiff and his coworkers worked late, Defendant did not record or account for those hours and failed to compensate them for them.

Unpaid Overtime

42.    By failing to properly track Named Plaintiff and his coworkers' hours worked, Defendant failed to pay them for all hours worked and failed to pay them overtime for all hours worked over 40 per week.

43.    During large periods of employment, Defendant failed to pay Named Plaintiff at least for 3 to 5 lunch breaks per week, equaling 1.5 to 2.5 overtime hours per week being unpaid.

44.    Defendant also failed to pay Named Plaintiff and his coworkers for any overtime hours they worked outside of their pre-planned schedules, such as working late some days, which happened regularly.

45.    At least once or twice a month, Named Plaintiff and his coworkers worked late, working 1 to 5 hours extra per week. However, Defendant failed to track these hours worked and failed to pay them any wages for them.

46.    Defendant failed to pay Named Plaintiff and his coworkers *any* overtime for the hours they did not track.

47.    During his work in the "Violations Department," Named Plaintiff regularly worked over 40 hours per week, but Defendant refused to pay him and other coworkers any overtime hours over 40.

48.    When Named Plaintiff asked Defendant about the overtime, they told him in the Violations Department, it was a policy to only pay 40 hours per week, regardless of how long the workers worked.

49.    Defendant's policy to pay only 40 hours per week in the Violations Department is evident from their timesheets which marked 40.00 on the dot.

50.    Defendants failed to pay Named Plaintiff and his coworkers in the Violations Department any overtime for hours they worked over 40 in any given week.

Compensation & misclassified and not properly paid work

51.    During his employment, Defendant paid Named Plaintiff between $45.67 and $47.37 per hour.[2]

52.    After Named Plaintiff worked as an elevator mechanic for several months, in mid-October 2023, Defendant made him take the title of a "mechanic helper" again.

53.    After mid-October 2023, especially, when he worked in the Violations Department, Named Plaintiff worked as an elevator mechanic at least 2 to 3 times per week, where he worked alone and performed full duties as an elevator mechanic.

54.    When Named Plaintiff worked at the Violations Department, his time sheets stated that he was a "mechanic," but Defendant only paid him as a mechanic helper.

55.    While Named Plaintiff worked at the Violations Department, he was regularly forced to work alone and perform the duties of a mechanic.

56.    From mid-October 2023 to May 3, 2024, despite Named Plaintiff often working as an elevator mechanic, Defendant paid him at the rates of a mechanic helper and not an elevator mechanic.

57.    During his employment, Defendant failed to always pay Named Plaintiff the proper rate of pay for the mechanic work he did, instead, misclassifying him and only paying at helper rates.

---

[2] Named Plaintiff does not have access to all of his paystubs and does not want to speculate about when he got the raise.

58.     From mid-October 2023 to May 3, 2024, Defendant failed to properly compensate Named Plaintiff for his work an elevator mechanic.

Labor Law Notice and Wage Statement Violations

59.     Defendant did not post a poster advising Named Plaintiff and other employees of their rights to a minimum wage and overtime premium pay at their office or any job locations.

60.     Defendant failed to provide Named Plaintiff and other similarly situated employees with the Notice and Acknowledgment of Payrate and Payday under N.Y. Lab. Law § 195.1 when they were hired or at any point in their employment.

61.     Defendant did not provide Named Plaintiff or the other similarly situated employees with an accurate wage statement under N.Y. Lab. Law § 195.3 with any wage payment.

62.     With Defendant failing to provide Named Plaintiff and other similarly situated employees with the Notice and Acknowledgment of Payrate and Payday and wage statements with every wage payments, it willfully denied them the information needed to determine whether they were being lawfully paid, including whether they were being paid overtime premium pay.

63.     Defendant failed to post or keep posted an accurate and up to date notice explaining the minimum wage and overtime pay rights provided under the Labor Law in any area where Named Plaintiff and the Class Members are employed.

64.     Had Defendant provided Named Plaintiff and other similarly situated employees with the Notice and Acknowledgement of Payrate and Payday and wage statements with every wage payments, they would have had enough information to determine that throughout their employment they were not being paid overtime premiums as required by the Labor Law.

Complaints & Retaliation

65.    On February 28, 2024, Named Plaintiff made a complaint at work about safety conditions, which trigger Defendant's retaliation against him.

66.    On February 28, 2024, Named Plaintiff told Defendant's foreman, Gus Collado Jr., that Defendant's employees were not using a hand truck needed for lifting and moving heavy elevator parts, but were using rags, which was dangerous because the material could rip allowing heavy parts to fall through and result in worker injury. Also, it is dangerous because using cloths does not allow for proper lifting and weight distribution techniques.

67.    Named Plaintiff knew that using rags to lift heavy elevator parts was unlawful based on his OSHA training.

68.    On February 28, 2024, Named Plaintiff told his foreman, Collado, that the team was missing hand trucks and it was not safe to do this work with the use of rags. This visibly irritated and displeased the foreman. Several coworkers witnessed his complaint.

69.    Named Plaintiff's complaints about safety were reasonable given the trainings and OSHA regulations and were expressing concern for worker and general public safety as they worked in the buildings where many people reside to do elevator maintenance and repairs.

70.    Named Plaintiff's safety complaint constitutes protected activity.

71.    After work on February 28, 2023, Named Plaintiff received a call from Will Rivera, who told him that his complaints did not go over well, and he has to stop complaining about safety if he wants to keep his job. Rivera also told Named Plaintiff that he was aware that Named Plaintiff had a pregnant wife at home and that their "boss," also knew about her pregnancy, so he should be more careful because "he did not want him to lose his job."

72.    On February 29, 2024, the next day after Named Plaintiff's complaint about safety, a supervisor, Ishmail Mantezuma, made a joke to him that he "got the hand truck that [he] needed," referencing his complaint to Collado and insinuating that Named Plaintiff was there looking out for other safety violations.

73.    After he complained and reported safety concerns, Defendant further broke safety regulations by sending Named Plaintiff, who was a mechanic helper, to do mechanic's work alone, unsupervised.

74.    This included instances where he was assigned to do work that requires a minimum of two people by safety regulations, but he was forced to do alone, putting him in danger. And, to add insult to injury, Defendant despite forcing Named Plaintiff to do mechanic's work, it only paid him as a helper.

75.    On February 29, 2024, Named Plaintiff was paired with Collado, who forced him to carry heavy equipment, weighing approximately 200 pounds, up eight flights of stairs alone, when by safety requirements it was a two-person job.

76.    This was very difficult and physically dangerous for Named Plaintiff, but he understood that Collado was signaling to him to stay quiet and not question him again publicly.

77.    On February 29, 2024, carrying heavy equipment alone and against safety regulations, Named Plaintiff hurt his back, which to this date continues to bother him and cause him pain.

78.    On or around March 1, 2023, Defendant transferred Named Plaintiff to the Violations Department, where he had to use his own personal vehicle to travel around all the five Boroughs of New York City, without being fully reimbursed, and was forced to do work alone against safety regulations.

79.    During his work in Violations Department, Named Plaintiff worked over 40 hours per week, but Defendant refused to pay him any overtime hours over 40, telling him that in this department only 40 hours get paid.

80.    Named Plaintiff's work and job in the Violations Department was much worse than in his previous position and he was also not paid for all the hours that he worked at this department.

81.    Defendant's move of Named Plaintiff to the Violations Department so soon after his safety complaint was as an act of retaliation for his protected activity.

82.    Defendant did not treat other employees who did not complain the same way as they treated Named Plaintiff after he complained. Instead, employees who stayed quiet were allowed to work in their regular positions, were not transferred, demoted or had their cars taken away.

Discrimination for being a father-to-be/caregiver status discrimination

83.    Named Plaintiff found out his wife was pregnant in or around October 2023.

84.    At the start of 2024, Named Plaintiff share the news with his coworkers and that she was due in June 2024.

85.    Named Plaintiff also mentioned to his supervisor, Will Rivera, that he planned to take some time off for paternity to welcome his child, take care of it and help his wife.

86.    On May 3, 2024, one month before Named Plaintiff's wife gave birth in June 2024, Defendant fired Plaintiff.

87.    Defendant discriminated against Named Plaintiff because he was about to become a father.

88.    Defendant's decision to terminate Named Plaintiff was in whole or in part caused by his intention to take paternity leave and because he was a father-to-be.

89.     The fact that Named Plaintiff was a father-to-be and his wife was pregnant was a factor, if not the factor, that led to his termination by Defendant.

90.     Defendant had no justifiable or legitimate reason to fire Plaintiff.

<u>CLASS ACTION ALLEGATIONS</u>

91.     Named Plaintiff asserts these allegations on his own behalf and on behalf of other similarly situated persons under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3):

> <u>All persons</u> whom Defendant employ and have employed in a positions of elevator mechanics or mechanic helpers at any time since February 7, 2019 to the entry of judgment in this case (the "Class Period"), who were employees within the meaning of the New York Labor Law (the "Class" or "Class Members").

92.     The Class Members identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within Defendant's sole control, upon information and belief, more than 100 Class Members exist.

93.     Named Plaintiff's claims are typical of the Class Members', and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against Defendant.

94.     Defendant has acted or refused to act on grounds generally applicable to the Class Members, making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class Members.

95.     Plaintiff is committed to pursuing this action and have retained competent counsel experienced in employment law, retaliation wage and hour law and class action litigation.

96.     Plaintiff has the same interest in this matter as all other Class Members and their claims are typical of Class Members'.

-13-

97.     Common questions of law and fact exist as to the Class Members that predominate over any questions solely affecting the individual Class Members, including but not limited to:

a.      whether Defendant employed Named Plaintiff and the Class Members within the meaning of the Labor Law;

b.      whether Defendant failed to keep true and accurate time records for all hours worked by Named Plaintiff and the Class Members;

c.      what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d.      whether Defendant failed or refused to pay the Class Members minimum wage and overtime premium pay at their regular rate of pay for all hours worked in excess of 40 hours per workweek;

e.      whether Defendant made unlawful deductions from the Class Members' wages;

f.      whether Defendant failed to provide the Class Members with wage notices and wages statements under Labor Law §§ 195.1 and 195.3;

g.      whether Defendant failed to post or keep posted a notice explaining the minimum wage and overtime pay rights provided under the Labor Law in any area where Named Plaintiff and the Class Members are employed;

h.      whether Defendant is liable for all damages claimed hereunder, including but not limited to, interest, costs and disbursements and attorneys' fees; and

i.      whether Defendant should be enjoined from such violations of the Labor Law in the future.

<u>COLLECTIVE ACTION ALLEGATIONS</u>

98.    Under 29 U.S.C. § 206, Named Plaintiff seek to assert these allegations and claims

as a collective action:

> All persons whom Defendants employ and have employed, who were elevator
> mechanics or mechanic helpers, at any time since February 7, 2022 to the entry of
> judgment in this case (the "Collective Action Period"), who were non-exempt
> employees within the meaning of the FLSA (the "Collective Action Members") and
> who were not paid overtime premium pay, for all hours worked under the FLSA.

99.    Named Plaintiff and the Collective Action Members are similarly situated on

several legal and factual issues, including:

a.    whether Defendants employed the Named Plaintiff and Collective Action

Members within the meaning of the FLSA;

b.    whether the Named Plaintiff and Collective Action Members performed

similar duties;

c.    whether Defendants willfully or recklessly violated the FLSA; and

d.    whether Defendants failed to pay the Named Plaintiff and Collective Action

Members overtime compensation for hours worked in excess of 40 hours per workweek, violating

the FLSA and the regulations promulgated thereunder.

<u>FIRST CAUSE OF ACTION</u>
UNPAID OVERTIME
UNDER THE FLSA
(On Behalf of Named Plaintiff and the Collective Action Members)

100.    Plaintiff realleges every preceding allegation as if set forth fully herein.

101.    Plaintiff consents, through counsel, to be a party to this action under 29 U.S.C.

§216(b).

102.    Defendant employed, and/or continues to employ, Plaintiff and the Collective

Action Members within the meaning of the FLSA.

103.    Defendant has been, and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce under the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

104.    Defendant was required to pay Plaintiff and the Collective Action Members no less than 1.5 times the regular rate at which they were employed for all hours worked in excess of 40 hours in a workweek under the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

105.    At all relevant times, Defendant had a policy and practice of refusing to pay Plaintiff and the Collective Action Members the proper overtime compensation to their employees for their hours worked in excess of 40 hours per workweek.

106.    Defendant was aware or should have been aware that its practices described in this Complaint were unlawful, making its violations willful or reckless.

107.    Defendant has not made a good faith effort to comply with the FLSA with respect to Plaintiff and the Collective Action Members' compensation.

108.    Defendant has failed to make, keep and preserve records with respect to its employees sufficient to determine the wages, hours, and other conditions and practices of employment, violating the FLSA, 29 U.S.C. §§ 201, 207(a)(1) and 215(a).

109.    Due to Defendant's FLSA violations, Named Plaintiff and the Collective Action Members are entitled to recover from Defendant their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, pre- and post-judgment interest, and any other legal and equitable relief as this Court deems just and proper.

<u>SECOND CAUSE OF ACTION</u>
FAILURE TO PAY THE OVERTIME PREMIUM PAY
UNDER THE NEW YORK LABOR LAW
(On Behalf of Named Plaintiff and the Class Members)

110.    Named Plaintiff realleges every allegation of the preceding paragraphs as if set forth fully herein.

111.    Under the Labor Law and supporting New York Statement Department of Labor Regulations, Defendant was required to pay Named Plaintiff and the Class Members one and one-half (1.5) times their regular rate of pay for all hours they worked in excess of 40 per workweek.

112.    Defendant failed to pay Named Plaintiff and the Class Members the overtime wages to which they were entitled, violating N.Y. Lab Law § 650 and Part 146, § 146-1.4of Title 12 of the Official Compilation of Codes, Rules and Regulations promulgated by the Commissioner of Labor pursuant to the Minimum Wage Act.

113.    In failing to compensate Named Plaintiff and the Class Members for all compensable hours worked over 40 in any given week, Defendant violated the Labor Law and the regulations thereunder, 12 N.Y.C.R.R. §§ 146-1.2, 1.4.

114.    Defendant willfully violated the Labor Law by knowingly and intentionally failing to pay the Class Members the correct amount of overtime wages.

115.    Due to Defendant's Labor Law violations, Named Plaintiff and the Class Members are entitled to recover from Defendant their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

<u>THIRD CAUSE OF ACTION</u>
FAILURE TO PROVIDE 195.3 WAGE STATEMENT
UNDER THE NEW YORK LABOR LAW
(On Behalf of Named Plaintiff and the Class Members)

116.    Named Plaintiff realleges every allegation of the preceding paragraphs as if set forth fully herein.

117.    Defendant has willfully failed to supply Named Plaintiff and the Class Members with the required statement with every payment of wages, violating Labor Law § 195.3.

118.    Due to Defendant's violations of N.Y. Lab Law § 195.3, Named Plaintiff and the Class Members are entitled to recover from Defendant $250.00 for each workday that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. N.Y. Lab Law § 198(1)-d (2016).

<u>FOURTH CAUSE OF ACTION</u>
FAILURE TO PROVIDE 195.1 NOTICE
UNDER THE NEW YORK LABOR LAW
(On Behalf of Named Plaintiff and the Class Members)

119.    Named Plaintiff realleges every allegation of the preceding paragraphs as if set forth fully herein.

120.    Defendant has willfully failed to supply Named Plaintiff and the Class Members with the required Notice and Acknowledgement of Pay Rate and Payday under Labor Law § 195.1(a) within ten business days of its first employment date.

121.    Due to Defendant's violations of Labor Law § 195.1, Named Plaintiff and the Class Members are entitled to recover from them $50.00 for each work day that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. New York. Lab. Law § 198(1)-b (2016).

## FIFTH CAUSE OF ACTION:
### RETALIATION - UNDER THE NEW YORK LABOR LAW
(On Behalf of Named Plaintiff)

122.    Named Plaintiff realleges every allegation of the preceding paragraphs as if set forth fully herein.

123.    Named Plaintiff is an employee within the meaning of Labor Law § 215.

124.    Defendant is an employer within the meaning of Labor Law § 215.

125.    Named Plaintiff's repeated complaints to Defendant about its unlawful employment practices, Labor Law violations and unsafe work conditions constitute protected activity under the Labor Law.

126.    After Named Plaintiff's complaints, Defendant retaliated against him, including but not limited to, by transferring him to a different department, making him incur work expenses that remain unpaid, and by putting him in dangerous work conditions by making him work alone on elevators repair and maintenance against safety regulations.

127.    A causal connection exists between Named Plaintiff's complaints and Defendant's retaliation against him.

128.    Defendant violated Labor Law § 215 by retaliating against Named Plaintiff for engaging in protected activity under the Labor law.

129.    Due to Defendant's violations of the Labor Law, Named Plaintiff is entitled to recover from Defendant liquidated and/or punitive damages, reasonable attorneys' fees, costs, and such other legal and equitable relief as this Court deems just and proper.

## SIXTH CAUSE OF ACTION
### SEX DISCRIMINATION
### NEW YORK STATE HUMAN RIGHTS LAW
(On Behalf of Named Plaintiff)

130.    Plaintiff repeats every allegation of the preceding paragraphs as if set forth in this cause of action.

131.    At all relevant times, Plaintiff was an "employee" and a "person" within the meaning of the NYSHRL and Defendant is an "employer."

132.    The NYSHRL prohibits employment discrimination and harassment based on sex. N.Y. Exec. Law § 296(1)(a). Caregiver and paternity leave-related discrimination is a form of sex discrimination.

133.    Defendant discriminated against Plaintiff discriminating against him in conditions and quality of employment, repeatedly harassing him, repeatedly writing him up after it learned his wife was pregnant without any legitimate justification, denying him privileges and peace at work, creating a hostile work environment and not allowing him to take on promotions and ultimately wrongfully terminating him.

134.    Defendant is vicariously liable for an actionable hostile and discriminatory environment created by its supervisors who had immediate or successively higher authority over Plaintiff.

135.    As a result of Defendant's discrimination of him, Plaintiff has suffered and continue to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain, physical pain and suffering, inconvenience, loss of enjoyment of life and medical expenses.

SEVENTH CAUSE OF ACTION
GENDER-BASED DISCRIMINATION
NEW YORK CITY HUMAN RIGHTS LAW
(On Behalf of Named Plaintiff)

136.    Plaintiff repeats every allegation of the preceding paragraphs as if set forth in this cause of action.

137.    At all relevant times, Plaintiff was an "employee" and a "person" within the meaning of the NYCHRL and Defendant was an "employer."

138.    Plaintiff was treated less well than his colleagues who were not expecting fathers or future caregivers to an infant, violating N.Y.C. Admin. Code § 8-107(1)(a).

139.    Defendant discriminated against Plaintiff discriminating against him in conditions and quality of employment, repeatedly harassing him and ultimately wrongfully terminating him.

140.    Defendant is strictly liable for the actionable discriminatory environment created by its supervisors who had immediate or successively higher authority over Plaintiff.

141.    As a result of Defendant's discrimination of them, Plaintiff has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain, physical pain and suffering, inconvenience, loss of enjoyment of life and medical expenses.

142.    Defendant discriminated against Plaintiff with malice and/or reckless indifference to their rights under the NYCHRL.

EIGHTH CAUSE OF ACTION
FAMILIAL STATUS DISCRIMINATION
NEW YORK STATE HUMAN RIGHTS LAW
(On Behalf of Named Plaintiff)

143.    Plaintiff repeats every allegation of the preceding paragraphs as if set forth in this cause of action.

144.    The NYSHRL prohibits employment discrimination and harassment based on familial status. N.Y. Exec. Law § 296(1)(a).

145.    Defendant discriminated against Plaintiff because of his familial status subjecting him to hostile work environment, repeatedly harassing him and ultimately wrongfully terminating him.

146.    Defendant discriminated against Plaintiff because of his familial status by effectively denying him a paternity leave and firing him a month before his child was born.

147.    Defendant is vicariously liable for an actionable hostile and discriminatory environment created by its supervisors who had immediate or successively higher authority over Plaintiff.

148.    As a result of Defendant's discrimination of him, Plaintiff has suffered and continue to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain, physical pain and suffering, inconvenience, loss of enjoyment of life and medical expenses.

NINTH CAUSE OF ACTION
CAREGIVER STATUS DISCRIMINATION
NEW YORK STATE HUMAN RIGHTS LAW
(On Behalf of Named Plaintiff)

149.    Plaintiff repeats every allegation of the preceding paragraphs as if set forth in this cause of action.

150.    Plaintiff was treated less well than his colleagues who were not expectant fathers, violating N.Y.C. Admin. Code § 8-107(1)(a).

151.    Defendant discriminated against Plaintiff because of his caregiver status by denying him opportunity to take paternity leave and terminating him one month before his child was born.

152.    Defendant is strictly liable for the actionable discriminatory environment created by its supervisors who had immediate or successively higher authority over Plaintiff.

153.    As a result of Defendant's discrimination of them, Plaintiff has suffered and continue to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain, physical pain and suffering, inconvenience, loss of enjoyment of life and medical expenses.

154.    Defendant discriminated against Plaintiff with malice and/or reckless indifference to their rights under the NYCHRL.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Named Plaintiff, on behalf of himself and the Class and Collective Action Members, respectfully requests this Court grant the following relief:

a.    Certifying this action as a class action under Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Rule 23 Class Members and appointing Named Plaintiff and his counsel to represent the Class Members;

b.    A declaratory judgment that the practices complained of herein are unlawful under the Labor Law;

c.    An injunction against Defendant and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d.    An award for unpaid overtime premium pay, including for "off the clock work," under the Labor Law;

e.    An awad for unpaid overtime under the FLSA;

f.    An award for "off the clock work" under the Labor Law;

g.    An awarded for unlawful deductions under the Labor Law;

h.    An award for failing to provide the N.Y. LAB. LAW § 195.1 Notice;

i.      An award for failing to provide the N.Y. Lab. Law § 195.3 Wage Statements;

j.      An award of liquidated damages as a result of Defendant's Labor Law violations;

k.      An award of pre-judgment and post-judgment interest;

l.      An award of back pay, front pay, and all benefits along with pre and post judgment interest in the amount of at least $500,000.00 for Named Plaintiff;

m.      An award of liquidated and/or punitive damages, reasonable attorneys' fees, costs, and such other legal and equitable relief as this Court deems just and proper for Defendant's unlawful retaliation against Named Plaintiff under the Labor Law;

n.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

o.      Such other and further relief as this Court deems just and proper.

Dated: New York, New York
       February 7, 2025

                    LIPSKY LOWE LLP


                    s/ Douglas B. Lipsky
                    Douglas B. Lipsky
                    Milana Dostanitch
                    420 Lexington Avenue, Suite 1830
                    New York, New York 10170-1830
                    212.392.4772
                    doug@lipskylowe.com
                    milana@lipskylowe.com
                    *Attorneys for Named Plaintiff*
                    *and the Putative Class*